IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMES KUPETZ,

    Plaintiff,

    v.

PITTSTON AREA SCHOOL DISTRICT,

    Defendant.

3:16-cv-00110

## OPINION

**Mark R. Hornak, United States District Judge**[1]

Plaintiff James Kupetz ("Plaintiff") contends that Pittston Area School District (the "District") denied him a promotional opportunity on account of his age. Count I of his Complaint alleges a violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq*. (ADEA), and Count II alleges a violation of the parallel provisions of the Pennsylvania Human Relations Act, 43 P.S. §§ 951 *et seq*. (PHRA). (Compl., ECF No. 1.) The District responds that age was not a basis for any alleged denial of promotional opportunity. Now before the Court is the District's Motion for Summary Judgment (ECF No. 23). For the reasons which follow, the District's motion will be denied.

I.    **BACKGROUND**

The District employed Plaintiff as its Technology Coordinator, and from the time he was hired, Plaintiff alone oversaw virtually all technology for the District. (Kupetz Am. Decl. ¶¶ 8, 10(a), ECF No. 42; Kupetz Dep. ECF No. 24-3, 30:11–14.) At all times relevant to this case, Plaintiff, born in 1963, was over forty (40) years old. (Kupetz Dep. 11:8; Kupetz Am. Decl. ¶

---

[1] The undersigned was designated and assigned this case by the Honorable D. Brooks Smith, Chief Judge of the United State Court of Appeals for the Third Circuit. (ECF No. 46.)

6(d).) In 2012, the District conducted a technology evaluation, in which a recommendation was made to the District to create new positions in the technology arena. (Kupetz Dep. 46:8–11.) During a December 2012 School Board meeting, the District agreed to create two new positions: Technology Integrator and Network Engineer. (Def.'s Statement of Material Facts in Supp. of Mot. for Summ. J. ("Def.'s SMF") ¶ 6, ECF No. 24.)

The District posted the "Technology Integrator" position and indicated that it would receive applications from December 13, 2012, to December 21, 2012. (Def.'s Am. Answers to Pl.'s Req. for Admis. ¶¶6–8, ECF 44-1.) Plaintiff did not apply for the Technology Integrator position because he believed that this position would be reporting to him, as he would be directing the Technology Department. (Def.'s SMF ¶ 16; Kupetz Dep. 50:19–20.) The Network Engineer position was also posted at that time. The District conducted interviews for both positions, and Plaintiff was involved in that interview process on behalf of the District. (Def.'s SMF ¶ 7; Kupetz Dep. 64:15–18.) On January 10, 2013, during an interview, Plaintiff heard Board President Charles Sciandra refer to *hiring* a Technology Director, to whom the Network Engineer would report. (Def.'s SMF ¶¶ 17–20; Kupetz Dep. 64:6–18.) Plaintiff did not respond to that comment. (Kupetz Dep. 66:24–67:1.)

The School Board convened for a meeting on January 15, 2013, and passed a motion to amend the "Technology Integrator" position to one entitled "Technology Director." The District claims this change was in name only, but Plaintiff argues that the change also resulted in a salary increase for the position, altered duties, and a higher position in the District's organizational hierarchy, because this position was now the head of the Technology Department.[2] The District

---

[2] *Compare* Def.'s Br. in Supp. of Mot. for Summ. J., ECF No. 25, at 8 ("The changing of the job title, and the hiring of Savokinas, are not adverse employment actions against the Plaintiff."), *with* Pl.'s Br. in Opp. To Def.'s Mot. for Summ. J., ECF No. 44, at 15 ("[N]ot just the job title was changed, but its duties, reporting function and salary were also changed . . . .").

2

never posted to fill a position for "Technology Director." (Kupetz Am. Decl. at ¶ 6(c).) The School Board then, at the same meeting, passed a motion to hire Christy Savokinas for the position of Technology Director. (Def.'s Am. Answers to Pl.'s Req. for Admis. ¶ 12.) Ms. Savokinas had applied for the posted Technology Integrator position. (*Id.*) Ms. Savokinas, born in 1978, was in her mid-thirties at the time she was hired, and her incoming salary for Technology Director was listed at $75,000. (*Id.* at ¶ 16; Linskey Dep., ECF 24-7, 26:3–4; Def.'s List of Names and Birth Years, ECF No. 24-4.) Prior to her employment with the District, Ms. Savokinas had worked with former Superintendent Michael Garzella. (Kupetz Dep. 81:11–20.)

Despite interviewing several candidates for the posted Network Engineer job, the School Board decided to table filling the Network Engineer position. (Def.'s Am. Answers to Pl.'s Req. for Admis. ¶ 13.) Both candidates had been given an assessment test during their application process, but the applicants were unable to complete the entire assessment. (Kupetz Dep., 82:17–83:4; Starna Dep., ECF No 24-6, 13:20–14:2.)

In summer 2013, months after Ms. Savokinas was hired, Board President Charles Sciandra made a comment at a board meeting about "upcoming young administrators." (Def.'s SMF ¶ 28.) While content of the exact quote is unclear,[3] it is clear that the comment was made in the context of hiring an administrator, Kevin Booth (who was in his mid-forties at the time) for the position of Principal. (Kupetz Dep. 72:20–24; Def.'s SMF ¶ 29.)

With respect to the Network Engineer position, another candidate was interviewed over the summer of 2013, Brad Hankey. There is some evidence in the record that Mr. Hankey was

---

[3] In his deposition, Plaintiff could not repeat the actual comment: "Q. And were you told specifically what Mr. Sciandra had said that evening? A. An upcoming young administrators [sic] in the District." (Kupetz Dep. 72:25–73:4.) It is also undisputed that "[t]he comment was made in reference to the Superintendent leaving and a succession plan where younger administrators would come up." (Def.'s SMF ¶ 61; Pl.'s Am. Resp. to Def.'s SMF ¶ 61.)

3

younger than the other applicants who had applied earlier,[4] but it is undisputed that Mr. Hankey was not given a written assessment test. Mr. Hankey was hired for the position. (Kupetz Dep. 84:4–85:6.[5])

Ms. Savokinas's duties as Technology Director incorporated "some" of Plaintiff's former duties as Technology Coordinator (Kupetz Am. Decl. ¶ 9), but Plaintiff continued in his position as Technology Coordinator until he voluntarily left the position in the summer of 2013 to assume a teaching position. (Kupetz Dep. 138:2–18.) By the end of Plaintiff's tenure as Technology Coordinator, in 2013, he was making the same salary as a teacher, $50,188, but with the ability to earn additional income in overtime compensation. (*Id.* at 36:4–17, 38:10–11.)

Plaintiff alleges that by denying him the opportunity to apply for the Technology Director position, he suffered damages, as he would have made more money as Technology Director, which would have also led to higher retirement benefits. (Kupetz Dep. 140:4–141:14.)

## II. STANDARD FOR REVIEW

Summary judgment may be granted where the moving party shows that there is no genuine dispute as to any material fact, and that a judgment as a matter of law is warranted. Fed. R. Civ. P. 56(a). Pursuant to Federal Rule of Civil Procedure 56, the Court must enter summary judgment against a party who fails to make a showing sufficient to establish an element essential to his or her case, and on which he or she will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In evaluating the evidence, the Court must interpret the facts

---

[4] Plaintiff testified that Mr. Hankey's age was a "lot less than all the other applicants that we had had for that position." (Kupetz Dep. 85:4–6.) Marilyn Starna, one of the School Board members, testified that one candidate "was definitely over 40" but she could not recall whether the other two candidates were over 40. (Starna Dep. 14:20–25.) Robert Linskey, another School Board member, testified that he "would guess" that the other candidates were under 40, but he was "not sure." (Linskey Dep., ECF No. 24-7, 29:1–5.)

[5] Brad Hankey was born in 1985. (List of Names and Birth Years, ECF No. 24-4.)

4

in the light most favorable to the nonmoving party, drawing all reasonable inferences in his or her favor. *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007).

The burden is initially on the moving party to demonstrate that the evidence contained in the record does not create a genuine issue of material fact. *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004). A dispute is "genuine" if the evidence is such that a reasonable trier of fact could render a finding in favor of the nonmoving party. *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Where the nonmoving party will bear the burden of proof at trial, the moving party may meet its burden by showing that the admissible evidence contained in the record would be insufficient to carry the nonmoving party's burden of proof. *Celotex*, 477 U.S. at 322.

Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond his or her pleadings and designate specific facts by the use of affidavits, depositions, admissions or answers to interrogatories showing that there is a genuine issue of material fact for trial. *Id.* at 324. The nonmoving party cannot defeat a well-supported motion for summary judgment by simply reasserting unsupported factual allegations contained in his or her pleadings. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

### III. DISCUSSION

Plaintiff asserts that had the Technology Director position been posted, he would have applied, and his qualifications would have been well suited for the position. (Kupetz Dep. 110:20–25.) Plaintiff argues that two members of the District's School Board did a last minute switch with respect to the Technology Integrator position to prevent Plaintiff from applying to be Technology Director, as these two Board members wanted a younger person to lead the Technology Department. (*Id.* at 104:23–105:10.) By denying Plaintiff the opportunity to apply

5

for the position, the rest of the Board was denied the opportunity to compare what he says were his superior qualifications to those of Ms. Savokinas. (*Id.*)

Plaintiff asserts discrimination claims based on his age pursuant to the Age Discrimination and Employment Act ("ADEA"), and the Pennsylvania Human Relations Act ("PHRA"). Each of these claims is analyzed pursuant to the familiar burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To prevail, Plaintiff must first establish a prima facie case of discrimination. *Id.* at 802. If he does so, the burden of production shifts to the District to articulate a legitimate, non-discriminatory rationale for the allegedly discriminatory action. *Id.* The burden then shifts back to Plaintiff to establish by a preponderance of the evidence that the District's stated reason is pretextual. *Id.* at 804; *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 326 (3d Cir. 2015).

### A. Exhaustion of Administrative Remedies

The District initially argues that Plaintiff cannot maintain his PHRA claim because he "failed to raise" such a claim before the EEOC. (Def.'s Reply Br., ECF No. 33, at 3.) Plaintiff timely dual-filed his charge of discrimination with PHRC and EEOC. (Charge of Discrimination, ECF No. 24-1.) The charge lays out the factual background of the case, and the charge specifically cites to the ADEA and Title VII.[6] (*Id.*) The charge does not specifically cite to the PHRA. (*Id.*) This lack of citation is not fatal to Plaintiff's claim because a charge with the PHRC need only "set forth the particulars" of the "unlawful discriminatory practice complained of." 43 Pa. Cons. Stat. § 959. The District does not cite to any legal authority (nor has the Court found any such authority) to support its argument that describing the alleged discriminatory practice in a dual-filed charge of discrimination without specifically naming the PHRA results in a failure to exhaust state law administrative remedies.

---

[6] Plaintiff never included a Title VII claim in his Complaint. (Compl., ECF No. 1.)

The Court's review of case law in this Circuit supports the conclusion that the test for exhaustion focuses on "factual allegations" and not recitation of the name of discrimination statutes. *See, e.g., Zahavi v. PNC Fin. Servs. Grp.*, No. 07-cv-376, 2007 U.S. Dist. LEXIS 77484, at *25 (W.D. Pa. Oct. 18, 2007) ("[T]he 'crucial element of a charge of discrimination is the factual statement contained therein' and not 'the attachment of a legal conclusion to the facts alleged.'") (citing *Bernstein v. Nat'l Liberty Int'l Corp.*, 407 F. Supp. 709, 712–13 (E.D. Pa. 1976)); *Wetzel v. Liberty Mut. Ins. Co.*, 511 F.2d 199, 202 (3d Cir. 1975), *vacated on other grounds*, 424 U.S. 737 (1976) (noting that Title VII could not operate effectively if procedural technicalities could bar relief). Plaintiff has exhausted his administrative remedies with respect to his PHRA claim.

### B. Plaintiff's Prima Facie Case

Plaintiff contends that he suffered age discrimination in violation of the ADEA and PHRA when the District denied him the opportunity to apply for the new Technology Director position and then hired a less qualified, younger candidate.[7] To establish a prima facie case of age discrimination under the ADEA, Plaintiff must show that: (1) he is forty years of age or older; (2) the District took an adverse employment action against him; (3) Plaintiff was qualified for the position in question; and (4) he was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus. *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013). Only the second and fourth elements are in dispute here.

The District first argues that Plaintiff cannot establish that the District took an adverse employment action against him with respect to denial of a promotional opportunity because he

---

[7] Claims of age discrimination under the ADEA and PHRA are analyzed in an identical fashion. *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 972 (3d Cir. 1998). To the extent the pleadings and papers in opposition to Defendant's Motion for Summary Judgment allege claims for retaliation (under state or federal anti-retaliation law), such claims were withdrawn by Plaintiff at oral argument.

7

never applied for the position of Technology Director. *See Jones v. Gemalto, Inc.*, No. 11-6902, 2013 U.S. Dist. LEXIS 41069, at *32 n.4 (E.D. Pa. Mar. 25, 2013) (plaintiff who did not apply for a position cannot establish prima facie claim of racial discrimination). However, "when the failure to promote arises out of an informal, secretive selection process," a plaintiff need not prove that he "technically applied" for the position if there is an inference of intentional discriminating treatment. *Cole v. Del. Tech. & Cmty. Coll.*, 459 F. Supp. 2d 296, 305 (D. Del. 2006) (quoting *EEOC v. Metal Serv. Co.*, 892 F.2d 341, 350 (3d Cir. 1990)). It is undisputed that the District never posted an opening for Technology Director. The record reveals that the District in essence created it "on the fly" in the middle of a Board meeting, such that no one (other than perhaps Ms. Savokinas) could apply. The District then hired an individual, fifteen years Plaintiff's junior, who applied for a position—Technology Integrator—that Plaintiff would have had no reason to apply for, as he understood that position to be one that would report to him. "Accordingly, there is a sufficient evidentiary foundation from which [Plaintiff] may argue for an inference of discrimination, even though he did not apply for the position." *Id.*

The District next argues that there is insufficient evidence to support an inference of discriminatory animus. In other words, the District asserts that "Plaintiff has failed to produce any evidence that age was a factor in the change of the job title [or the] hiring of Christy Savokinas." (Def.'s Br. in Supp., ECF No. 25, at 10.) However, Plaintiff "does not need to produce compelling evidence or conclusive proof that [the District's] adverse employment decision resulted from age discrimination." *Sempier v. Johnson & Higgins*, 45 F.3d 724, 729 (3d Cir. 1995) (citing *Chipollini v. Spencer Gifts*, 814 F.2d 893, 900 (3d Cir. 1987), and *Maxfield v. Sinclair Int'l*, 766 F.2d 788, 792 (3d Cir. 1985)). A sufficient age difference between Plaintiff and the person who was given the promotion from which a fact-finder could reasonably conclude

that the employment decision was made on the basis of age is sufficient to meet the fourth element of an ADEA prima facie case. *Id.* The fifteen (15) year age difference here is sufficient. *Id.* at 730 (stating that "well over ten years" age difference "is clearly sufficient to satisfy the fourth prong"). Plaintiff establishes a prima facie case for age discrimination.

### C. The District's Alleged Reasons for Denial of Promotional Opportunity

"Generally, the true focus of age discrimination cases occurs when the defendant articulates legitimate business reasons and the plaintiff submits evidence of pretext." *Healy v. N.Y. Life Ins. Co.*, 860 F.2d 1209, 1214 n.1 (3d Cir. 1988). The employer's "burden is 'relatively light,' and the employer need only 'introduce evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision.'" *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)). Here, the District presents three different reasons for Plaintiff being denied the promotional opportunity. First, the School Board made the decision to "clarify the title" from Technology Integrator to Technology Director in order to "have someone in charge of technology." (Def.'s Br. in Supp., ECF 25, at 14.) Evidence in the record does support the District's contention that the events central to this case were part of a total re-vamp of the District's technology program, and the structure of the department required, in essence, tinkering.[8]

Second, the District argues that "Attorney Joseph Saporito, solicitor for the District, made the decision to change the title after speaking with [Pennsylvania School Board Association]." (Def.'s Br. in Supp., ECF No. 25, at 14.) The District's evidentiary support for this position is the following language in the minute entry for the January 15, 2013, School Board meeting:

---

[8] *See* Kupetz. Dep. 17:8–13, 27:4–28:2, 39:3–40:21. *See also* Starna Dep. 10:6–18.

> "Atty. Saporito stated that he made the decision to change the title - this was supposed to be a director's position and he contacted PSBA -and a motion was being made to amend the title nothing has changed but just a clarification of the actual title. Job duties are the same and nothing is changing. PSBA suggested that this was the correct way to amend this."

(ECF No. 24-9, at 1.)

Third, there is evidence in the record that supports the District's claim that Savokinas was hired because she had a strong relationship with the Superintendent, Mike Garzella.[9] Even Plaintiff acknowledged that Ms. Savokinas's history with the Superintendent "had something to do with her" getting a position with the District (although Plaintiff disputes that their history played a factor in her jump from Technology Integrator to Technology Director). (Kupetz Dep. 81:21–82:4.)

The District states that these reasons—clarification of organizational structure, a directive from PSBA via its own lawyer, and what is in essence insider politics in the nature of a prior working relationship between Savokinas and Garzella—each show that the decision to place Savokinas as the head of technology, without offering Plaintiff an opportunity to apply for the position, was based on legitimate, non-discriminatory motives. None of these reasons facially have anything to do with anyone's age. The Court thus concludes that the District has met its light burden at this stage.

### D. Plaintiff's Showing of Pretext

Because the District's stated reasons are facially legitimate and nondiscriminatory (at least as to the ADEA and the PHRA), the burden shifts back to Plaintiff to show that a factfinder could conclude, by a preponderance of the evidence, that the stated reasons are pretext for age discrimination. *Deville v. Givaudan Fragrances Corp.*, 419 F. App'x 201, 207 (3d Cir. 2011)

---

[9] (Starna Dep., ECF No. 24-6, 28:17–21.) ("Dr. Garzella had a very strong relationship with Christy Savokinas from a previous position, and I think he worked with the majority board members to bring her in at the salary she came in at and with that title. That's again my opinion.")

(citing *Smith v. City of Allentown*, 589 F.3d 684, 690 (3d Cir. 2009), and *Duffy v. Paper Magic Grp.*, 265 F.3d 163 (3d Cir. 2001)). Plaintiff can accomplish this by one of two ways:

> To show that an employer's legitimate, non-discriminatory reason for an employment action was pretext for discrimination, 'the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; *or* (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'

*Smith v. Medpointe Healthcare, Inc.*, 338 F. App'x 230, 235 (3d Cir. 2009) (emphasis added[10]) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)). Plaintiff presents arguments under both prongs.

### 1. Plaintiff's "Disbelieve the Proffered Reasons" Argument

Under the first *Fuentes* prong, Plaintiff must "present evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision." *Tomasso v. Boeing Co.*, 445 F.3d 702, 706–07 (3d Cir. 2006) (quoting *Kautz v. Met–Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005). "To discredit the employer's articulated reason, the plaintiff need not produce evidence that necessarily leads to the conclusion that the employer acted for discriminatory reasons . . . ." *Simpson v. Kay Jewelers*, 142 F.3d 639, 644 (3d Cir. 1998). In order to discredit the District's proffered reasons, Plaintiff cannot simply show that the District was wrong or mistaken in denying him the promotional opportunity, "since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Fuentes*, 32 F.3d at 765. Instead, Plaintiff must show "such

---

[10] There was some debate at oral argument and in the papers on whether Plaintiff bears the burden to show the District's proffered reasons were pretext for an age-discriminating motive, but *Fuentes* makes clear that Plaintiff can survive summary judgment by discrediting the employer's reasons. As our Court of Appeals clarified in *Fasolf v. Justice*, a plaintiff need not prove "pretext plus"—discrediting the proffered reason *and* showing discrimination was the real reason. 409 F.3d 178, 186–87 (3d Cir. 2005). Instead, "the factfinder's disbelief of the employer's explanation plus proof of the elements of the prima facie case may be enough for the factfinder to infer the ultimate fact of discrimination." *Id.* (citing *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 146–47 (2000)). No affirmative or direct evidence of discrimination is required under the first *Fuentes* prong for a Plaintiff to get to a jury. *Id.*; *McGrath v. Lumbermens Merch. Corp.*, 851 F. Supp. 2d 855, 865 n.13 (E.D. Pa. 2012).

11

weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the [District's] articulated reasons for denying Plaintiff the opportunity to apply for the position such "that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." *Id.* at 765 (alteration in original) (footnote omitted).

Plaintiff seeks to debunk the first articulated reason, clarification in organizational structure, with evidence that the position changed so significantly that it went beyond mere "clarification," and even if the School Board sought to simply re-structure the Technology Department, that reason does not explain the abruptness of that action, the effect of which denied Plaintiff and others the opportunity to apply for the revised position.

Plaintiff has put forth evidence that the position changed considerably from what was originally posted in terms of title, compensation, duties, and reporting to the extent that it appears to undermine the Defendant's argument that the changes were simply to clarify who was in charge.[11] Even if the changes alone are insufficient to contradict the clarification reason, the District's explanation also fails to explain why Plaintiff (and anybody else) was denied the opportunity to apply for the revised position. "[H]aving one person in charge of technology" is indeed a legitimate, non-discriminatory reason for changing a job description to the extent it alters reporting duties and title, especially where the District is creating a new department, but that is not the conduct that Plaintiff protests. Plaintiff argues that the District went about selecting its "one person" in charge of technology in a manner that prevented Plaintiff from putting forth his candidacy when the Board knew that Plaintiff was interested in being the head of the Technology Department. The "clarification" reason gives no explanation whatsoever for

---

[11] (*See* Pl.'s Am. Resp. to Def.'s SMF, ECF No. 43, ¶ 10.)

why such "clarification" had to happen without re-opening the position, and such an articulated reason fails to explain the pace at which the Board acted to fill the "revised" position.[12] In fact, the Board tabled the other new technology position—technology integrator—for months following the January meeting. (Jan. 15, 2013, Meeting Minutes, ECF No. 24-9.) Thus, Plaintiff has advanced record evidence from which a jury could conclude that the District's "clarification" reason fails as an explanation for the denial of a promotional opportunity. Plaintiff has carried its burden to show the "clarification" reason could be found to be pretextual. But in order to survive the District's Motion for Summary Judgment, Plaintiff must also likewise counter the second and third reasons advanced. *Fuentes*, 32 F.3d at 762.

Plaintiff seeks to discredit the second articulated reason, the Solicitor's reference to the PSBA, with the same logic: it may explain an alteration in the position, but it fails to explain why the Board changed the position at the last minute on the floor of the School Board meeting in a manner that deprived Plaintiff the opportunity to apply for the position. This reason is also thus incomplete to explain the denial of a promotional opportunity. But more than that, Plaintiff has put forth sufficient evidence in the record to challenge the reason that only a title change was made pursuant to the PSBA's guidance. As a preliminary matter, the District makes no real effort to explain why the stated PSBA guidance led to a title change. Furthermore, the minute notes from the January 15, 2013, School Board meeting themselves demonstrate the change was more than to the title, as the Board members discussed confusion over what the salary would be and what the reporting duties would be. (ECF No. 24-9.) As Board Member Linskey pointed out in

---

[12] To the extent the District argues that the Technology Integrator position as always intended to be the position that would run the Technology Department, Plaintiff successfully shows sufficient incoherencies and inconsistencies to overcome that reason. First, Plaintiff was told by Superintendent Mike Garzella that the two new positions would report to him. (Kupetz Dep. 59:17–21.) Second, although the Superintendent testified that he intended for all three technology positions to report direct to him, he also testified that the position advertised was not the one that ultimately came to fruition. (Garzella Dep., ECF No. 24-5, 27:16–17.) Third, two members of the Board stated that the altered position was not the position advertised. (Jan. 15, 2013, Meeting Minutes, ECF No. 24-9.)

13

his deposition, one Board member [Sciandra] stated the changes was to put someone in charge of technology, yet the Solicitor was telling the Board at the same time that the reason for the change was based on communications with PSBA and the change would be in title only. (Linskey Dep. 14:15–21.) These two articulated reasons—given at the same time during the same meeting—collide with one another. The record shows sufficient evidence from which a reasonable factfinder could disbelieve the "PSBA reason" articulated by the District.

With respect to the third articulated reason, the District relies on Board member Starna's statement in her deposition that Dr. Garzella "worked with the majority board members to bring [Savokinas] in at . . . that [new] title." (Starna Dep. 28:17–21.) But this is counterweighed against Superintendent Garzella's own testimony in the record that he did not want the Technology Integrator position changed to Technology Director, and he thought it was "wrong" of the Board to do so. (Garzella Dep. 33:5–33:23, 35:17–18, 36:20–37:24.) Garzella also testified that he never discussed changing the title with the Board prior to the January 15, 2013, meeting. (Garzella Dep. 26:7–10.) In light of this testimony, a reasonable factfinder could certainly find the District's reason related to "insider connections" with Superintendent Garzella unworthy of credence. Plaintiff has shown sufficient evidence in the record from which a factfinder could reasonably disbelieve all of the District's reasons for the denial of the promotional opportunity.

### 2. Plaintiff's "Invidious Discriminatory Animus" Argument

Because Plaintiff has successful shown that each articulated reason by the District could reasonably be disbelieved, the Plaintiff meets his burden under the first pretext prong, and the Court need not analyze Plaintiff's arguments under the second pretext prong.[13]

---

[13] The chief argument advanced by the Plaintiff relates to a comment made by Sciandra related to hiring a Principal. It would appear to the Court that the rather ambiguous statement made by a Board member months later in regard to a building principal's position and an overall administrative succession plan is entitled to little or no evidentiary consideration as to these events.

14

### 3. Plaintiff's meets his burden to show pretext

Considering the record in a light most favorable to Plaintiff, Plaintiff has produced sufficient evidence to show that the District's stated reasons for denying Plaintiff the promotional opportunity were pretextual. While the Court notes that the depositions in the record—with the exception of Plaintiff's—are sparse on the issue of discriminatory motive on the basis of age, the depositions also fail to present a cohesive (or in many ways, coherent) reason as to why the events unfolded as they did, with nearly every person deposed offering a different reason or no reason at all for the hiring of Savokinas as Technology Director in the manner she was.[14] It will thus be left to the factfinder to decide what happened and why, and whether unlawful age discrimination was a "but for" reason for the actions taken. Consequently, denial of summary judgment is proper.

## IV. CONCLUSION

For the foregoing reasons, the District's Motion for Summary Judgment is denied. An appropriate order will issue.

Mark R. Hornak
United States District Judge

Dated: August 13, 2018

cc: All Counsel of Record

---

[14] Just by way of example, School Board Member Linskey testified that "there were members of the Board who just did not like Mr. Kupetz. They just wanted to get Mr. Kupetz. They wanted to embarrass Mr. Kupetz." (Linskey Dep. 22:14–18.) School Board Member Starna testified that the change in position was because "the majority wanted to bring [Christy Savokinas] in," and "Dr. Garzella had a very strong relationship with [Savokinas]." (Starna Dep.28:8–21.) Superintendent Garzella testified that "my opinion is they didn't like [Kupetz] because of his relationship with Bob Linskey." (Garzella Dep. 29:1–3.)

15